**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMMED IBRAHIM, | |
| *Petitioner,* | Civil Action No. 25-17189 |
| v. | **OPINION** |
| ERIC ROKOSKY, *et al.* | February 4, 2026 |
| *Respondents.* | |

**SEMPER, District Judge.**

**THIS MATTER** comes before the Court upon the Petition for a Writ of Habeas Corpus of Petitioner Mohammed Ibrahim ("Petitioner"), pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his continued immigration detention without an individualized bond hearing. (ECF No. 1.) For the reasons set forth below, the Court concludes that Petitioner's detention—now exceeding twelve months—has become unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of Sudan who entered the United States on October 28, 2024, after stowing away on a cargo vessel. (ECF No. 1 ¶ 21; ECF No. 7-1 at 3.) Upon arrival, immigration officials detained Petitioner and placed him in expedited removal proceedings. (ECF No. 1 ¶ 22.) When Petitioner expressed fear of returning to Sudan based on past persecution related to his religious beliefs, he was afforded a credible-fear interview. (*Id.*) A supervisory asylum

officer determined that Petitioner had demonstrated a credible fear of persecution or torture. (ECF No. 1, Exs. A–B.)

As a result of that determination, Petitioner was referred to removal proceedings under 8 U.S.C. § 1229a.[1] (ECF No. 1 ¶ 3.) On November 4, 2025, the Department of Homeland Security issued a Notice to Appear charging Petitioner as removable under 8 U.S.C. §§ 1182(a)(6)(A)(i) (presence without admission or parole) and 1182(a)(7)(A)(i)(I) (lack of valid entry documents). (ECF No. 1, Ex. A; ECF No. 7 at 6-7.)

Petitioner pursued asylum, withholding of removal, and protection under the Convention Against Torture while detained. (ECF No. 7 at 11-12.) His merits hearing was initially scheduled for May 9, 2025. (ECF No. 1, Ex. G.) At that hearing, DHS raised new arguments concerning Petitioner's nationality and alleged firm resettlement, and for the first time suggested Chad as an alternative country of removal. (ECF No. 1 ¶ 23.) The Immigration Judge continued the proceedings and ordered briefing. (*Id.*) DHS did not submit a brief, and the merits hearing was ultimately rescheduled for August 8, 2025. (ECF No. 1, Exs. H–J.)

On September 24, 2025, the Immigration Judge denied all applications for relief and ordered Petitioner removed to Sudan. (ECF No. 1, Ex. C.) Petitioner timely appealed that decision to the BIA, where it remains pending. (ECF No. 1, Ex. D.)

Petitioner has remained continuously detained since October 28, 2024—a period now exceeding twelve months. (ECF No. 1 ¶ 2.) He has not received a bond hearing and is regulatorily ineligible for bond. (*Id.*) *See* 8 C.F.R. § 1003.19(h)(2)(i)(B). Petitioner has submitted a request for parole pursuant to 8 C.F.R. § 212.5(b) and ICE Directive 11002.1, supported by evidence of

---

[1] Notwithstanding that referral, Petitioner's continued detention remains governed by 8 U.S.C. § 1225(b), which authorizes the detention of arriving noncitizens pending the completion of removal proceedings and does not provide for an individualized bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

identity, community sponsorship, and medical need. (ECF No. 1 ¶ 25.) That request remains pending without adjudication. (*Id.*)

On January 6, 2026, Petitioner filed a Notice of Supplementary Authority (ECF No. 9), advising the Court of the decision in *Maksaddzhon A. v. Pittman*, No. 25-13734, 2025 WL 3648710 (D.N.J. Dec. 17, 2025), where the Hon. Madeline Cox Arleo found that Petitioner's detention of fifteen months under § 1225(b) exceeded constitutional limits under the *German Santos* framework.

## II.   LEGAL STANDARD

### A.  Habeas Jurisdiction

Under 28 U.S.C. § 2241, federal district courts retain jurisdiction to review the legality of executive detention, including immigration custody. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003). A district court may grant habeas relief if the petitioner "is in custody in violation of the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Jurisdiction lies in the district of initial custody and is unaffected by subsequent transfers. *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445–446 (3d Cir. 2021); *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

In *German Santos v. Warden Pike Cnty. Corr. Facility*, the Third Circuit recognized that "an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause." 965 F.3d 203, 210 (3d Cir. 2020) (holding that due process imposes an outer limit on the duration of mandatory detention). Thus, where a noncitizen is mandatorily detained pending removal proceedings under 8 U.S.C. § 1226(c), the Due Process Clause demands a bond hearing once detention has become "unreasonably long." *Id.* at 210-211. To assess reasonableness, courts consider: (1) the length of detention; (2) whether detention is likely to

3

continue; (3) the reasons for delay; and (4) the conditions of confinement. *Id.* at 211; *see also Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 475–476 (3d Cir. 2015).

When detention becomes unreasonable, due process requires an individualized bond hearing at which the Government bears the burden of proving, by clear and convincing evidence, that continued detention is necessary to mitigate flight risk or danger, and that alternatives to detention are insufficient. *Id.* at 213–214 (describing minimum procedural safeguards required by due process).

Although *German Santos* arose under 8 U.S.C. § 1226(c), courts within this Circuit have applied its constitutional framework to prolonged detention under § 1225(b), reasoning that both provisions authorize detention without individualized risk assessments. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 826 (W.D. Pa. 2025) (applying *German Santos* to arriving alien detained under § 1225(b)); *Maksaddzhon A. v. Pittman*, No. 25-13734, 2025 WL 3648710 (D.N.J. Dec. 17, 2025) (same).

The Court recognizes that the Supreme Court in *Jennings v. Rodriguez* rejected the imposition of time limits or bond-hearing requirements as a matter of statutory interpretation under § 1225(b). 583 U.S. 281, 297 (2018). The relief ordered here does not rest on a construction of the immigration statutes, but instead flows from the Due Process Clause of the Fifth Amendment, which independently constrains the duration of civil detention. *See German Santos,* 965 F.3d at 209–210 (confirming that *Jennings* does not foreclose as-applied constitutional challenges to prolonged detention.)

### III.  ANALYSIS

#### A.  Length of Detention

Petitioner has been detained for approximately twelve months without a bond hearing. (ECF No. 1 ¶ 2.) Detention of this duration substantially exceeds the allowable periods the

Supreme Court has described as typical when upholding mandatory detention statutes against facial challenge. *See Demore v. Kim*, 538 U.S. 510, 529–530 (2003) (noting that detention under § 1226(c) typically lasts "roughly a month and a half," or "about five months" where appeals are taken).

Courts within this Circuit have repeatedly recognized that detention approaching or exceeding six months without an opportunity for individualized review raises serious constitutional concerns. *See Chavez-Alvarez*, 783 F.3d at 475–476 (explaining that detention becomes suspect as it moves beyond six months); *Zadvydas*, 533 U.S. at 701 (observing that Congress doubted the constitutionality of detention longer than six months).

Moreover, Petitioner's detention is likely to continue for a significant additional period. His appeal before the BIA remains pending, with no transcript or briefing schedule issued. (ECF No. 1 ¶ 24.) Given the BIA's substantial backlog, there is no reasonable expectation of imminent resolution. This factor weighs heavily in favor of finding the detention unreasonable. *German Santos*, 965 F.3d at 212 (finding likelihood of continued detention "unreasonable").

### B. Responsibility for Delay

The record does not reflect that Petitioner engaged in dilatory tactics. (*See* ECF Nos. 1; 8.) To the contrary, he pursued relief in good faith and requested only limited continuances necessary to respond to new issues raised by the Government. (ECF No. 1 ¶ 50.) Courts must be careful not to penalize noncitizens for pursuing available legal remedies. *See Leslie v. Att'y Gen.*, 678 F.3d 265, 271 (3d Cir. 2012) (warning against treating good-faith litigation as a factor against detainees).

Here, certain delays are attributable to the Government, which raised new arguments on the day of the merits hearing and then failed to brief those issues despite a court-ordered schedule. (ECF No. 1 ¶ 51.) Even where neither party acts in bad faith, however, detention may still become

unreasonable by virtue of its length alone. *German Santos*, 965 F.3d at 211 (explaining that reasonableness does not turn solely on fault).

### C. Conditions of Confinement

Petitioner is confined in a secure detention facility under conditions comparable to penal incarceration. *See Chavez-Alvarez*, 783 F.3d at 475-476 (noting that civil detention becomes more constitutionally troubling as it resembles criminal punishment). Petitioner has also submitted evidence of serious medical issues, including respiratory conditions for which surgery was recommended but not provided during detention. (ECF No. 1 ¶ 52, Ex. F.) As detention lengthens, the severity of confinement conditions assumes greater constitutional significance. *German Santos*, 965 F.3d at 210.

### D. Totality of the Circumstances

Considering the length of detention, the likelihood of continued confinement, the absence of dilatory conduct by Petitioner, and the conditions of detention, the Court concludes that Petitioner's continued detention without an individualized bond hearing has become unreasonably prolonged in violation of the Due Process Clause. This conclusion rests on the constitutionality of the detention itself and does not require the Court to assess the validity of the underlying removal proceedings. Accordingly, the Court's exercise of habeas jurisdiction is not foreclosed by the Third Circuit's recent decision in *Khalil v. President, United States*, No. 25-2162, 2026 WL 111933, at *9 (3d Cir. Jan 15, 2026), which addressed detention claims that were "inextricably linked" to the removal process. *See Kourouma v. Jamison*, No. 26-182 2026 WL 120208, at *3 (E.D. Pa. 2026) (distinguishing the petitioner's challenge to government's authority to detain him without a bond hearing from the challenge to detention in *Khalil* that was "'inextricably linked' to

his removal proceedings").[2]  The Court acknowledges the valid order of removal here.  (*See* Ex. C.)  The instant habeas petition does not challenge the validity of that removal order, and this decision does not disturb that order.  But the Due Process Clause does not permit the Government to detain a noncitizen for over a year, with no foreseeable end, without affording him a meaningful opportunity to contest the necessity of that detention.  *See Zadvydas*, 533 U.S. at 690 (prohibiting arbitrary civil detention); *see also Maksaddzhon A.*, 2025 WL 3648710, at *3 (providing petitioner with a bond hearing because his detention of "more than 15 months" was unduly prolonged and thus unreasonable under *German Santos*).

Therefore, Respondents shall provide Petitioner with an individualized bond hearing in which the Government bears the burden of establishing that Petitioner's continued detention is necessary because he poses a flight risk or danger to the community, and that no less restrictive alternatives would suffice.  *German Santos*, 965 F.3d at 213–214.

### E.  Parole and Accardi Claims

Petitioner also asserts that ICE's failure to adjudicate his parole request in accordance with its own binding directives violates the Administrative Procedure Act and the Accardi doctrine.  (ECF No. 1 ¶¶ 38–45.)  Because the Court grants relief on constitutional grounds, it need not reach those claims.  *See Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., *concurring*) (counseling constitutional avoidance).

---

[2] "Unlike the challenge to detention in *Khalil*, Petitioner's challenge here is not "inextricably linked" to his removal proceedings. Petitioner does not argue that his confinement is unlawful because the Government's removal action is itself invalid. *Cf.* [*Khalil*, No. 25-2162] at 28 ("Though Khalil also challenges his detention, his arguments against it are identical to his arguments against removal."). Nor does Petitioner challenge the Government's broader authority to detain him pending a final decision on removal. Instead, he challenges the Government's authority to detain him *without a bond hearing.*" *Kourouma*, 2026 WL 120208, at *3 (emphasis in original).

## IV. CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is **GRANTED**. Respondents shall provide Petitioner with an individualized bond hearing consistent with due process within 7 (seven) days of the accompanying Order. At that hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner's continued detention is necessary because he poses a flight risk or danger to the community, and that no less restrictive alternatives would suffice. *German Santos*, 965 F.3d at 213–214.

An appropriate Order follows.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**
